IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| *Plaintiff,* | : | |
| v. | : | No. 24-cr-042-1 |
| NYEEM THRONES, | : | |
| *Defendant.* | : | |

**Goldberg, J.**                                                                                                   **June 25, 2024**

**MEMORANDUM OPINION**

On February 1, 2024, Defendant Nyeem Thrones was charged in a three-count indictment with possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a), (b)(1)(C) (Count One), possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Two), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Count Three). Defendant moves to dismiss Count Three as unconstitutional under the Second Amendment, both as applied to him and on its face. He relies on the recent decisions in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022) and Range v. Attorney General, 69 F.4th 96 (3d Cir. 2023) (*en banc*). For the following reasons, I will deny the Motion.

**I.       FACTUAL BACKGROUND**

The following uncontested background is taken from the Government's response in opposition to the Motion to Dismiss.

1

While out on state parole, Defendant posted a publicly-available video to his Instagram account showing him firing a pistol at a range with the caption, "Bang this bitch wit one eye like I'm fetty wap." Law enforcement officers and members of the Pennsylvania State Board of Probation and Parole viewed the video and referred the matter to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for further investigation.

Upon identifying the shooting range in the video, ATF agents obtained surveillance video which showed Defendant and another man arriving with multiple firearms, renting an additional pistol, and shooting each of their firearms during their visit. The video also captured Defendant using his phone to access his Instagram account, take a video of himself, and post the video that the agents later observed. The video also captured Defendant removing an additional Glock pistol from a cross-body bag and firing that weapon.

After obtaining a search warrant for Defendant's parole-approved residence, ATF agents found Defendant in his bedroom a few feet from a Glock model 23 pistol hidden behind a standing mirror. Agents also recovered ammunition for both the Glock and a second, unrecovered firearm, drug packaging material, digital scales, $5,000, and 91 vials of cocaine base packaged for distribution. The vials were found in a pocket of a men's jacket that Defendant was seen wearing in postings on his Instagram account.

Prior to this offense, Defendant was convicted of four ungraded felony drug offenses, each punishable by up to ten years' imprisonment. Specifically, on February 18, 2016, he was convicted in Philadelphia County of Possession with Intent to Distribute Controlled Substances (35 Pa.C.S. § 780-113(a)(30)). On May 2, 2017, he received another conviction in Philadelphia County of Possession with Intent to Distribute Controlled Substances (35 Pa.C.S. § 780-113(a)(30)). On July 11, 2017, Defendant received a third conviction in Philadelphia County for Possession with Intent

to Distribute Controlled Substances (35 Pa.C.S. § 780-113(a)(30)).  On March 9, 2022, Defendant was convicted in Tioga County for Possession with Intent to Distribute Controlled Substances (35 Pa.C.S. § 780-113(a)(30)).  At the time of the current offense, Defendant was under parole supervision for the Tioga County conviction.

**II.    DISCUSSION**

The Second Amendment provides that "[a] well regulated Milita, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const., Amend II.  Section 922(g)(1) of Title 18 makes it unlawful for "any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition."  18 U.S.C. § 922(g)(1).

The Supreme Court's recent Second Amendment jurisprudence begins with District of Columbia v. Heller, which found a ban on handguns in the District of Columbia to be unconstitutional.  554 U.S. 570, 635 (2008).  Heller explained that the Second Amendment protects an individual's right to possess a firearm even if not part of "militia" service but also clarified that this right is "not unlimited."  Id. at 626.  Specifically, "the right [to bear arms] [is] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  Id.  The Heller Court explained that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."  Id. at 626–27.

More recently, in New York State Rifle & Pistol Association v. Bruen, 597 U.S. 1, 142 (2022), the Supreme Court elaborated on the individual right to bear arms.  There, the Court held unconstitutional a state law requiring individuals to "demonstrate a special need for self-defense"

in order to carry a handgun in public. Id. at 38. In doing so, the Court explained that so-called "means-end scrutiny"—i.e., balancing the strength of the government's interest in regulating against the strength of the individual right infringed—was not a proper analysis in the Second Amendment context. Id. at 19. The Court clarified that where the Second Amendment covers an individual's conduct, the government cannot prohibit that conduct except in a manner consistent with "the historical tradition that delimits the outer bounds of the right to keep and bear arms." Id. In his concurrence, Justice Kavanaugh, joined by Chief Justice Roberts, reiterated Heller's statement that prohibitions on the possession of firearms by felons remained "presumptively lawful regulatory measures." Id. at 81.

Shortly after Bruen, the Third Circuit issued its *en banc* opinion in Range v. Attorney General, 69 F.4th 96 (3d Cir. 2023). There, Range brought a declaratory judgment action seeking to establish that § 922(g)(1) was unconstitutional as applied to him. Id. Range was within § 922(g)(1)'s prohibition as he was previously convicted of making a false statement to obtain food stamps, in violation of 62 Pa. Stat. § 481(a). Applying Bruen, the Third Circuit explained that a firearm regulation violates the Second Amendment if: (1) the text of the Second Amendment applies to the person and the conduct to be regulated, and (2) the Government fails to "affirmatively prove that its firearm regulation is part of the historic tradition that delimits the outer bounds of the right to keep and bear arms." Range, 69 F.4th at 101 (citing Bruen, 597 U.S. at 19).

After determining that Range was one of "the people" entitled to Second Amendment protection, the Third Circuit found that the Government failed to meet its burden of demonstrating that § 922(g)(1), as applied to Range, was "consistent with the Nation's historic tradition of firearm regulation." Range, 69 F.4th at 101–03. In so holding, the court acknowledged that Heller did not "cast doubt on longstanding prohibitions on the possession of firearms by felons." Id. at 103. The

court also referenced Justice Kavanaugh's concurrence in Bruen, which reiterated that felon in possession laws are "presumptively lawful." Id. at 103–04. The Third Circuit nonetheless found § 922(g)(1) unconstitutional as applied to "people like Range," who had been found guilty of making a false statement to obtain food stamp assistance, where there was no historical analogue of disarming such non-violent criminals. Id. at 106.

Defendant now posits two challenges to the § 922(g)(1) charge against him. First, he contends that the text of the Second Amendment applies to Defendant and the conduct to be regulated, and (b) the Government cannot "affirmatively prove that its firearm regulation is part of the historic tradition that delimits the outer bounds of the right to keep and bear arms." Range, 69 F.4th at 101. Second, Defendant asserts that § 922(g)(1) is unconstitutional on its face, not just as applied to him.

### A. As Applied Challenge

Defendant first contends that § 922(g)(1) is unconstitutional as applied to him and his circumstances. The Government responds that Defendant's challenge fails for three reasons: (1) he does not maintain that he possessed the gun and ammunition for a lawful purpose; (2) he was permissibly barred from possession of a firearm while on parole; and (3) even assuming Range was correctly decided, the bar on firearm possession for a felon such as Defendant is constitutionally permissible based on the historical test outlined in Bruen.

#### 1. Whether Defendant Must Maintain that He Possessed the Firearm for a Lawful Purpose to be Protected by the Second Amendment

Within Bruen's first step—whether the Second Amendment "covers an individual's conduct"—there are two sub-issues, the individual and the conduct. As to the individual, Defendant contends he is a member of "the people" sought to be protected by the Second Amendment. The Government does not contest this argument but rather asserts that the Second

Amendment does not cover Defendant's conduct. It reasons that, according to the Supreme Court, the core purpose of the Second Amendment is to protect the right to maintain arms to use in self-defense, meaning that the Government may disarm a person who possesses a firearm for an illegal purpose. Because Defendant has not argued that he had a lawful reason for possessing the firearm—and because it was recovered within a few feet of Defendant's cocaine base—the Government claims that his challenge should be denied.

Defendant responds that there is no requirement that a defendant state his purpose for possessing a firearm. In support of his position, Defendant cites United States v. Harper, No. 21-cr-236, 2023 WL 5672311, at *9 (M.D. Pa. 2023), a case from the Middle District of Pennsylvania wherein the court held that because the crux of a § 922(g)(1) charge is that mere possession of a firearm is a criminal act due to the defendant's status as a convicted felon, a defendant accused of this crime would have no reason to state his purpose for possessing the firearm. Id. at *9. The court held that "even assuming the defendant could make a representation about his purpose in possessing a firearm without that representation being deemed an admission," it was not clear that Bruen or Range would require an assertion of purpose in the criminal context. Moreover, even if the defendant asserted that he possessed the firearm for the purpose of self-defense, he would still be accused of violating § 922(g)(1) because the possession of a firearm for any purpose is a criminal act based on his status as a convicted felon. Id.

In contrast to Harper, several courts within this Circuit have found that where a § 922(g)(1) defendant cannot prove by a preponderance of the evidence that he was carrying a firearm for the purpose of self-defense—or other conduct expressly covered by the Second Amendment, such as hunting—the right to bear arms does not protect that defendant, and the indictment survives an as-applied challenge. See United States v. Laureano, No. 23-cr-12, 2024 WL 838887, at *4–5 (D.N.J.

6

Feb. 28, 2024) (finding that Second Amendment does not apply to "knowing, unlicensed possession outside the home of ammunition by a felon on supervised release"); United States v. Jenkins, No. 23-cr-88, 2023 WL 6534200, at *16 (E.D. Pa. Oct. 6, 2023) (finding that Second Amendment did not apply where defendant did not "affirmatively introduce any evidence that he sought to carry a gun for a Second Amendment purpose" and where he was arrested outside in a Philadelphia neighborhood); United States v. McBroom, No. 21-cr-97, 2023 WL 7221400, at *3 (W.D. Pa. Nov. 2, 2023) (where defendant possessed a firearm and ammunition in the front seat of the vehicle he was driving, which also contained nine types of illegal controlled substances and paraphernalia, defendant's possession of a firearm was not presumptively protected by the Constitution); United States v. Adams, No. 23-cr-122, 2024 WL 54112, at *7 (M.D. Pa. Jan. 4, 2024) (finding that Second amendment does not apply to the possession of firearms in furtherance of drug trafficking where indictment "implicates facts that defendant possessed firearms while drug trafficking").

Without deciding the legal question of whether Bruen or Range requires that a defendant assert a lawful purpose for possession of a gun, I find—based on the indictment at issue here—that I cannot conclusively discern Defendant's purpose for possession of the gun. Defendant was seen with a gun both at a shooting range and in his parole-approved residence. The fact that the gun was found within his home could conceivably suggest that he maintained it for self-protection, which is protected Second Amendment conduct. Alternatively, the fact that it was found near drugs and drug paraphernalia could suggest that he possessed the gun in furtherance of his drug distribution activities. But these allegations remain unproven. Absent a more developed factual record, the conduct inquiry at this stage is not straightforward, and I decline to resolve that issue for purposes of this Motion. See United States v. Zion, No. 22-cr-527, 2024 WL 1975497, at *4–

7

5 (D.N.J., 2024) (declining to resolve issue of defendant's purpose in possessing a firearm during motion to dismiss indictment).

### 2. Whether Defendant's Parole Status at the Time of the Offense Precludes Second Amendment Protection

The Government's second argument in opposition to Defendant's Motion to Dismiss his § 922(g)(1) charge contends that Defendant was on parole at the time of the instant offense and the terms of his parole prohibited his possession of a firearm. The Government reasons that the Second Amendment does not protect those who possess firearms in violation of their parole terms.

The Supreme Court has recognized that "[o]ffenders on probation are . . . subject to several standard conditions that substantially restrict their liberty. See United States v. Knights, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting Griffin v. Wisconsin, 483 U.S. 868, 874 (1987)). Indeed, parole "is a 'variation on imprisonment of convicted criminals' . . . in which the State accords a limited degree of freedom in return for the parolee's assurance that he will comply with the often strict terms and conditions of his release." Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 365 (1998) (quoting Morrissey v. Brewer, 408 U.S. 471, 477 (1972)). "In most cases, [a] State is willing to extend parole only because it is able to condition it upon compliance with certain requirements. The State thus has an 'overwhelming interest' in ensuring that a parolee complies with those requirements and is returned to prison if he fails to do so." Id. (quoting Morrissey, 408 U.S. at 483).

Defendant does not dispute that, as a parolee, he was not entitled to possess firearms or other weapons during his sentence. "Although parolees are entitled to greater freedoms than are prisoners, there is no basis upon which to conclude that parolees maintain, without any abridgment whatsoever, their Second Amendment rights." United States v. Oppel, No. 21-cr-276, 2023 WL

8

8458241, at *2 (M.D. Pa. Dec. 6, 2023). "To be sure, requiring someone to surrender their firearms may be legally problematic if that condition is totally unrelated to the penological purposes that probation is supposed to serve." United States v. Benson, No. 22-cr.225, 2023 WL 8373161, at *5 (E.D. Pa. Dec. 4, 2023). As noted by the Third Circuit, a condition of probation that deprives someone of a constitutional right "must be 'narrowly tailored and . . . directly related to deterring [the defendant] and protecting the public.'" United States v. Loy, 237 F.3d 251, 256 (3d Cir. 2001) (quoting United States v. Crandon, 173 F.3d 122, 128 (3d Cir. 1999)); United States v. Stine, 675 F.2d 69, 72 (3d Cir. 1982) (citation omitted) ("Imposition of a probation condition which may impinge on constitutional freedoms requires the sentencing court to weigh the purposes of probation, the extent to which probationers should be accorded the constitutional rights enjoyed by other members of society, and the needs of law enforcement."); cf United States v. Rahimi, 602 U.S. ___, 2024 WL 3074728, at *9–10 (June 21, 2024) (noting that certain restrictions of limited duration on firearm possession, as applied to a defendant, do not violate the Second Amendment).

Repeatedly, courts have found that the Second Amendment does not protect possession of firearms while on probation. See, e.g., United States v. Pritchett, No. 22-cr-48, 2024 WL 1021082, at *2 (D. Del. Mar. 8, 2024) (holding that probation is a custodial component of a sentence that entails the loss of wide range of liberties, including access to weapons); United States v. Claiborne, No. 22-cr-672, 2024 WL 112603, at *4 (D.N.J. Jan. 10, 2024) (possession of gun in violation of court supervision is not protected by the Second Amendment); United States v. Oppel, No. 21-cr-276, 2023 WL 8458241, at *2 (M.D. Pa. Dec. 6, 2023) (denying challenge to § 922(g)(1) indictment because "there is no basis upon which to conclude that parolees maintain, without any abridgment whatsoever, their Second Amendment rights."); United States v. Hawkes, No. 22-cr-111, 2023 WL 8433758, at *4 (D. Del. Dec. 5, 2023) (finding that defendant, who committed

9

offense while on probation, lacked standing to challenge § 922(g)(1) charge because "[i]nherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." (quotation omitted)); Benson, 2023 WL 8373161, at *4–5 (the Second Amendment does not protect possession of a firearm while on probation); United States v. Terry, No. 20-cr-42, 22-cr-178, 2023 WL 6049551, at *3 (W.D. Pa. Sept. 14, 2023) (finding that defendants had no standing to assert Second Amendment rights because any limitation on those rights "was not proximately caused by § 922(g)(1), but by the actions of independent third parties—the Pennsylvania state court and parole board that instituted their probation and parole conditions")

Defendant has not argued that the conditions of his probation were not narrowly tailored or directly related to protecting the public. Those conditions of probation barred him from possessing a firearm, meaning that he could not lawfully have been bearing arms for the purpose of self-defense when he was arrested. The prohibitions of § 922(g)(1) were not the proximate cause of any impingement on his Second Amendment rights. "His probation is thus an independent basis for concluding that [he] was not engaged in 'Second Amendment conduct'" at the time of his arrest. Benson, 2023 WL 8373161, at *5.

Because Defendant's "as-applied" challenge fails due to his probationary status, I need not engage in an in-depth analysis of historical analogues. Instead, I adopt the reasoning of my many colleagues who have found historical precedent to disarm convicted drug dealers given the strong and established connection between drug trafficking and violence. See United States v. Carothers, No. 20-cr-31, 2024 WL 1722521, at *6–7 (W.D. Pa. Apr. 22, 2024) (noting that courts around the country have routinely held that possessing a firearm in furtherance of a drug trafficking crime does not constitute conduct protected by the Second Amendment); United States v. Boone, No. 22-

cr-233, 2024 WL 965146, at *8 (D.N.J. March 6, 2024) (finding clear historical support for the need for dispossession statutes affecting a repeat offender with felony possession with intent to deliver or distribute illegal drugs); United States v. Woznichak, No. 21-cr-242, 2023 WL 7324442, at *7 (W.D. Pa. Nov. 7, 2023) (finding that the Government showed sufficient historical support for disarming defendant, who had prior drug trafficking convictions).

### B.   Facial Challenge

Defendant also challenges § 922(g)(1) on its face. "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" United States v. Mitchell, 652 F.3d 387, 405 (3d Cir. 2011) (*en banc*) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).

Defendant first contends that "there are no examples of founding, antebellum, or Reconstruction-era federal laws like 18 U.S.C. § 922(g)(1) permanently disarming non-capital criminals." (Def.'s Mem. Supp. Mot. to Dismiss 11 (quoting Range, 69 F.4th at 106 (Porter, J., concurring) (emphasis added)). Because there is no founding-era history of disarming people convicted of felonies at all, Defendant contends that Section 922(g)(1) is unconstitutional in all of its applications."

Defendant's argument fails as he cannot establish that there are no circumstances in which § 922(g)(1) would be valid because it is valid in at least one instance—as applied to him. Accordingly, I reject this challenge.

Defendant also argues that, in view of Range, § 922(g)(1) is "unconstitutionally vague" because it "criminalizes [] constitutionally protected conduct alongside whatever conduct might arguably be unprotected while providing no guidance for discerning which is which." (Def.'s

11

Mem. Supp. Mot. to Dismiss 12.) He asserts that "ordinary people" with a past criminal conviction have no "sure way to know" if possessing a gun will expose them to criminal punishment. (Id.)

Notably, Defendant does not contend that § 922(g)(1) is unconstitutionally vague as written. Rather, he argues that § 922(g)(1) "criminalizes reams of constitutionally protected conduct alongside whatever conduct might arguably be unprotected while providing no guidance for discerning which is which." (Def.'s Mem. Supp. Mot. to Dismiss 12.) Defendant does not cite a case in which a statute was found unconstitutionally vague simply because parts of it might be subject to as-applied challenges. Instead, he relies on United States v. Davis, which found the challenged statute unconstitutionally vague as written. 588 U.S. 445, 454. Courts have a long-standing, uninterrupted history of considering as-applied challenges to otherwise valid statutes, which necessarily make it more difficult to determine whether conduct is punishable. See, e.g., Yazoo & M. v. R. Co. v. Jackson Vinegar Co., 226 U.S. 217, 219-20 (1912) (finding that a state statute imposing a penalty for failing to settle a claim was not unconstitutional as applied to the facts of the case).

Allowing such a complication to invalidate the statute on its face would call into question the very ability of courts to permit constitutionally-mandated exceptions to otherwise valid laws: if a court, in any instance, found that some conduct was constitutionally permitted despite being prohibited by the statute, an individual would have to factor in the as-applied constitutional test to determine whether the conduct was illegal. See Ayotte v. Planned Parenthood, 546 U.S. 320, 328, 331 (2006) (vacating a district court opinion finding an act unconstitutional on its face even though it was only unconstitutional if applied "in a manner that subjects minors to significant health risks"). Defendant cites no authority that this complication has ever been held to raise a vagueness problem. I therefore conclude that § 922(g)(1) is not unconstitutionally vague.

Finally, Defendant posits—for purposes of preserving the argument—that § 922(g)(1) is an improper exercise of Congress's Commerce Clause power. As Defendant concedes, however, binding Third Circuit precedent forecloses this argument. United States v. Singletary, 268 F.3d 196 (3d Cir. 2001).

### III. CONCLUSION

For all of the foregoing reasons, I will deny Defendant's Motion to Dismiss Count Three of the Indictment. An appropriate Order follows.